Cox, Appellant, *v.* Wilkes-Barre Railway Corporation.

Argued December 2, 1940. Before SCHAFFER, C. J., MAXEY, DREW, LINN, STERN and PATTERSON, JJ.

*M. F. McDonald*, with him *M. F. McDonald, Jr., Thomas F. Farrell, Jr.,* and *Thomas M. Lewis,* for appellant.

*Ben R. Jones, Jr.,* with him *Frank P. Slattery* and *Paul Bedford,* for appellee.

OPINION BY MR. JUSTICE PATTERSON, January 6, 1941:

In this action of trespass Myrtle Cox, appellant, seeks to hold Wilkes-Barre Railway Corporation, appellee, liable for the death of her husband, Richard Cox, who died as the result of injuries sustained when one of its trolley cars collided with an automobile in which the husband was a passenger. The statement of claim, to which no affidavit of defense was filed, charged that appellee's motorman was negligent (a) in approaching a street intersection without warning, (b) in operating the trolley at an excessive rate of speed and (c) in failing to have it under proper control. After the statute of limitations had run, appellant sought to amend her statement of claim by adding an averment that appellee was negligent in failing to maintain its right-of-way in a reasonably safe condition "by permitting deep and

dangerous ruts to accumulate and to remain thereon." Leave to amend was refused and the refusal was sustained by this Court. See *Cox v. Wilkes-Barre Ry. Corp.*, 334 Pa. 568. At the conclusion of appellant's evidence the trial judge granted appellee's motion for compulsory nonsuit, on the ground that negligence on its part had not been established. Appellant's rule to remove the nonsuit, granted simultaneously with the allowance of appellee's motion for same, was discharged by the court en banc, and this appeal followed.

At about five-thirty in the morning of February 13, 1934, appellant's husband was a passenger in an automobile being driven in a southerly direction on the westerly side of Wyoming Avenue, in the Borough of Kingston, at a speed of ten to fifteen miles per hour. Wyoming Avenue, in the center of which the appellee company maintains a fifteen-foot right-of-way with a double set of tracks, is a straight sixty-foot wide highway and on the morning of the accident was covered with ice and snow. When the automobile had reached a point at or near the intersection of Wyoming Avenue with Hoyt Street, its right rear wheel struck an eighteen-foot long rut within, and parallel to the westerly rail of, appellee's southbound track. As the automobile reached the end of the rut it swung suddenly or skidded, at a forty-five degree angle, across the southbound track, over the space between the southbound track and the northbound track, and onto the northbound track where it was struck, *while it was still in motion,* by one of appelle's trolley cars approaching on the northbound track, in the opposite direction, at a speed of thirty to thirty-five miles per hour. The automobile was pushed sideways "two-thirds the width of Hoyt Street," approximately twenty feet, and up against a pole at the northeast corner of the intersection.

Anthony Korosec, who was the driver of the automobile involved and in the best position to judge of what actually took place, testified that only "about two sec-

onds" elapsed between the time his car swung to the left and the impact. One William Gilbey, who made his observations from a point on the sidewalk at least 190 feet away, testified that the automobile was on the northbound track for a period of "four to five seconds" but, when it was called to his attention that this testimony was inconsistent with statements previously made by him, he testified that the time the automobile was on the northbound track before the impact was "from one to two seconds" and that four to five seconds in all elapsed from the time the automobile reached the end of the rut until the impact. While testimony of two of the witnesses indicates that at the time the Korosec car came to the end of the rut the trolley was 175 to 200 feet away, the distance traveled by the trolley from the time the automobile landed in its path is not established and there is no evidence whatever that there was anything about the movement of the automobile prior to its entry on the northbound tracks which should have indicated to the motorman that it was out of control or that there was any danger. All the witnesses, including Gilbey, testified that at the time of the impact the automobile was still in motion. The presence, on the date of the accident, of an embankment of earth extending from a point on the west curb of Wyoming Avenue just beyond the southwestern corner of the intersection with Hoyt Street, to within two or three feet of the first rail of the southbound track, placed there by the Borough of Kingston and necessitating the driving of the automobile at least partially on the southbound track, is of no consequence; there was still "plenty" of space, notwithstanding the partial obstruction, which had existed for a period of three weeks or more and of which the driver of the automobile knew, for the passage of southbound traffic without any encroachment upon appellee's northbound track.

Viewing the evidence in the light most favorable to appellant's side of the case and giving her the benefit

of all the inferences which might with propriety be deduced therefrom, we are nevertheless duty bound to conclude, as did the court below, that it is insufficient to fix liability upon the appellee company. That the failure of the motorman to give warning of the trolley's approach is of no legal significance under the circumstances of this case is clear. As was said in *Gob v. Pittsburgh Rys. Co.*, 320 Pa. 225, at 229, "A motorman is not required to give notice of its approach to automobiles traveling in the cartway alongside or outside the path of the street car; otherwise there would be a constant clanging of bells." Moreover, the driver of the automobile saw the street car and knew of its approach; as sounding the gong of the trolley would have told him only what he already knew, whether warning was or was not given is of no moment: *Tolson v. P. R. T.*, 248 Pa. 227, 231. In any event, it is apparent that the driver having lost control of the movement of his car, a warning or signal, if given, would not have materially changed the situation and would have been futile. See *Ruthberg v. P. R. T. Co.*, 300 Pa. 536, 539. And, it is equally clear that the speed of the trolley car is not an element of negligence in this case. It was being operated on a straight track, in a broad thoroughfare and at a time when, so far as the record discloses, what little vehicular traffic there was at the early morning hour when the accident happened, was proceeding southerly, in a direction opposite that of the trolley. Compare *Gob v. Pittsburgh Rys. Co.*, supra, 229. As both vehicles involved were in Wyoming Avenue, the fact that the accident took place at or near the intersection with Hoyt Street is not important; the negligence charged relates to the Korosec car in Wyoming Avenue, and under the circumstances it cannot be said that the speed of the trolley, testified to, even if it would be regarded as excessive under other circumstances, was excessive as to it: *Beaumont v. Beaver Val. Traction Co.*, 298 Pa. 223, 227-28.

As to lack of control, it is well settled that "it is not the duty of a street railway company to anticipate and provide against every exigency or possible contingency that may suddenly arise in the operation of its lines, but that it performs its whole duty by the exercise of care according to the circumstances. . . . It is the duty of a motorman to keep a constant lookout ahead, and to have such control of his car as to avoid dangers ordinarily incident to its operation, and also to avoid such unusual and unexpected dangers as he saw in time to avoid": *Tatarewicz v. United Traction Co.,* 220 Pa. 560, 562-63. See also *Petri v. Pittsburgh Rys. Co.,* 328 Pa. 396, 400. It is only required of the motorman that he have his car under such control "as the circumstances seemed to require": *Schaeffer v. Reading Transit Co.,* 302 Pa. 220, 223; *Knobeloch v. Pgh., etc. Ry. Co.,* 266 Pa. 140, 144. "A motorman is not bound to anticipate that a motor vehicle traveling alongside [or, a fortiori, in the opposite direction] may dash out in front of the street car, or that when such vehicle approaches an object in its path, it will not stop but will turn on the track in front of the car. To hold otherwise would completely abolish the doctrine of superior right of way and would jeopardize riders of street cars": *Gob v. Pgh. Rys. Co.,* supra, 228. Nor is the motorman bound to so control his car as to avoid injury to a vehicle that might suddenly skid into his path. As said in *Beaumont v. Beaver Val. Traction Co.,* supra, 229-30: "Of course, the possibility of skidding is a matter to be considered by all persons using vehicles on slippery streets, but there is no presumption that any chauffeur is going to so drive his car that it will land in front of an approaching trolley car. When such event occurs an accident may be inevitable." "Where danger appears in the way, it must be a sufficient distance from the car, and give time enough to enable the operator to stop or slow down to avoid an accident. He must have the opportunity to act": *Weschler v. Buffalo & L. E. T. Co.,* 293 Pa. 472,

477-78.   See also *Sexauer v. Pittsburgh Rys. Co.*, 305 Pa. 319, 322.

As the minority opinion of the court below states: "The negligence of the motorman [in this case] is based on what occurred after the automobile was across the northbound track.   No matter how the automobile got on that track, the question is: Did the motorman have time to do anything to avert the accident?"   Disregarding Gilbey's testimony that the Korosec car was on the northbound track for a period of "from four to five seconds," and accepting his final statement that the impact occurred from "one to two seconds" after the automobile came upon the track, which statement is the one by which the case must be judged so far as his testimony is concerned *(Black v. Phila. R. T. Co.*, 239 Pa. 463, 466; *Parker v. Matheson M. C. Co.*, 241 Pa. 461, 467), we think it clear that appellant has failed to sustain the burden resting upon her *(Ginocchietti v. L. V. R. R. Co.*, 338 Pa. 507,) of showing sufficient opportunity, after the appearance of danger, for appellee's motorman to act to avoid this regrettable accident by the then exercise of reasonable care in stopping or slowing down a trolley under such control as the circumstances just prior to the appearance of danger seemed to require, to warrant any inference of lack of control by reason of his failure to do so.

It is apparent that the real cause of this accident and the injuries bringing about the death of appellant's husband was none of the matters alleged, but was the engagement of the rear wheel of the Korosec automobile in the rut within the appellee's southbound track.   For injuries so caused the company cannot be held responsible for the reason that negligence in respect thereof has not been, and cannot now be averred: *Cox v. Wilkes-Barre Ry. Corp.*, supra.

Judgment affirmed.