Stewart et vir. *v.* Ray (et al., Appellant).

Argued October 10, 1950. Before DREW, C. J., STERN, STEARNE, JONES, LADNER and CHIDSEY, JJ.

*Samuel W. Pringle,* with him *Dalzell, McFall, Pringle & Bredin,* for defendant, Infantino, appellant.

*Con F. McGregor,* with him *Bechman, Dunn, Parker & McGregor,* for plaintiffs, appellees.

*J. Roy Dickie,* with him *Dickie, Robinson & McCamey,* for defendant, Ray, appellee.

OPINION BY MR. JUSTICE CHIDSEY, November 21, 1950:

Florence C. Stewart and John M. Stewart, her husband, instituted this action in trespass against Anette Ray and Anthony Infantino, trading and doing business as Philadelphia-Pittsburgh Carriers, to recover damages for injuries sustained by her when the automobile of Anette Ray in which Mrs. Stewart was a passenger and the tractor-trailer of Infantino, driven by his employe, James Magrino, collided at an intersection in the City of Pittsburgh. A jury returned a verdict in favor of plaintiffs against defendant, Anette Ray, and in favor of Infantino. A motion for new trial by plaintiffs asserting inadequacy of the verdict was subsequently withdrawn. Anette Ray filed a motion for new trial claiming the verdict to have been against the weight of the evidence. These appeals by Infantino are from the order of the court below awarding a new trial as to both defendants. Plaintiffs did not appeal but are opposed to setting aside the verdicts against defendant Ray.

Anette Ray, about noon February 11, 1947, a clear, sunny day, was proceeding eastwardly on Sawmill Run

Boulevard approaching a T-intersection with Woodruff Street. Sawmill Run Boulevard is a four-lane highway and runs east and west. Woodruff Street intersects the Boulevard on the north side. In the center of Woodruff Street at the northerly line of the Boulevard is a triangular island separating traffic. A traffic light operating with the usual green, amber and red cycle is installed on said island. A similar traffic control light is installed along the southerly curb of Sawmill Run Boulevard opposite the traffic island.

Mrs. Stewart was occupying the front seat of the Ray car. A Mrs. Campbell and a Mrs. Perry occupied the rear seat. Mrs. Stewart was rendered unconscious as a result of the accident and had no recollection of the manner in which the accident happened. Mrs. Campbell and Mrs. Perry were talking with each other about a meeting to which they were going and were not paying much attention, if any, to the operation of the car. Mrs. Campbell did not know whether Mrs. Ray had executed a left turn and did not see the Infantino truck until, as she said, "it was practically on us".

Plaintiffs called James Magrino, the operator of the Infantino truck. Magrino, an experienced truck driver, was operating his 10 ton tractor-trailer, 38 feet in length and carrying a load of 3,000 pounds. According to his testimony, he had entered upon Sawmill Run Boulevard at Liberty Tubes and was proceeding westerly, intending to make a delivery at the Carnegie plant of the Superior Steel Company. He was travelling at a speed of 20 to 25 miles per hour in his right lane and did not change his course up to the point of collision. As he proceeded through a railroad underpass 50 to 55 feet from the intersection, he saw the Ray car approaching in the center of the two east-bound traffic lanes about 120 feet west of the traffic light. Mrs. Ray continued driving straight ahead, straddling the east-

bound traffic lanes at approximately the same speed at which he was travelling. She gave no indication of any intention to turn to her left. When Magrino was committed to the intersection, Mrs. Ray, without any noticeable change in her speed or having given any signal, turned her car abruptly to the left to enter upon Woodruff Street and ran into his tractor, striking the left front wheel to the rear of the bumper with the left front of her car. The front of the tractor at the time of the collision was about 4 feet from the traffic island. The collision destroyed the air brakes on the tractor-trailer, and damaged the steering apparatus so that it could be turned only to the left. After the impact, the tractor-trailer continued through the intersection and the right side of the trailer struck a pole at the northwest corner. When stopped, the rear end of the trailer was 6 to 8 feet from the pole and turned slightly toward the left. The Ray car came to rest in the west-bound lanes, headed west, with the rear end in line with and about 6 feet to the north of the light on the traffic island.

The Ray car sustained extensive damage. Replacements of parts of the front bumper, left front wheel, fan, radiator, both front fenders, both headlights, hood and other miscellaneous parts was required. The front bumper on the Infantino tractor had not been struck, although it required straightening. The sealed beam in the left headlight required replacement but not the headlight itself which was not damaged and apparently not struck. As a result of the collision at the left front wheel, the left spring was broken, the axle was bent, the fender pushed up, knocking the turning signal off the fender, the tie-rod beneath the truck was bent, and the air line broken, preventing the use of the brakes.

Mrs. Ray was also called by plaintiffs as for cross-examination. She testified that when she came to the intersection she stopped, although the traffic signal was

favorable to her and that while so stopped, the tractor-trailer "weaved" across and hit her.

Earl J. Threnhauser, a disinterested witness, called by defendant Infantino, testified that he had been driving a truck on Woodruff Street approaching the Boulevard and had stopped at the intersection to the right of the traffic island in compliance with the traffic light; that he saw the Ray car approaching from the west, straddling the two east-bound lanes and observed the Infantino tractor-trailer approaching from the east; that after the tractor-trailer had been committed to the intersection, Mrs. Ray executed a left turn directly into the left front of the tractor-trailer; and that Magrino did not swerve into the Ray car but was proceeding straight ahead on his extreme right lane until the Ray car drove into the truck.

The court below recited excerpts of testimony by Magrino and Threnhauser which it held rendered their respective testimony self-contradictory and stated: "In view of this very strange and contradictory testimony, we are of the opinion that it would not be in the interest of justice to terminate this case on the basis of the present verdicts and that there should be a retrial against both defendants."

Appellant contends that the court misconceived the probative value of the testimony of Magrino and Threnhauser, gave unwarranted weight to certain isolated answers made under cross-examination and ignored completely all corrections, clarifications and explanations given, all of which in the circumstances constituted a palpable abuse of discretion and a usurpation of the exclusive function of the jury as triers of fact. A careful review of the testimony, particularly that of Magrino and Threnhauser, leads to the unalterable conclusion that the testimony of Magrino is consistent throughout and that the testimony of Threnhauser,

while less clear, is equally positive and consistent as regards the happening of the accident.

Here, as in *Martin v. Arnold,* 366 Pa. 128, 77 A. 2d 99, this Court is again asked to reverse an order of the court below granting a new trial where that court has found the verdicts to be against the weight of the evidence and that the interests of justice require a new trial.

In that case it was said: "Where, as in the instant case, the court below has concluded that the verdict of the jury is contrary to the weight of the evidence and that the interests of justice require granting of a new trial, this Court is most hesitant to disturb such conclusion: Frank v. W. S. Losier & Co., Inc., 361 Pa. 272, 276, 64 A. 2d 829. However, the power and duty to review such action have never been abdicated: Jones et vir. v. Williams et al., 358 Pa. 559, at p. 564, 58 A. 2d 57 . . ."

The court below emphasized the following testimony by Magrino: "Q. And did you yourself observe any change in the direction of the Ray car before the collision occurred? A. No, I did not. Q. You didn't see that car make any turn at any time, did you? A. No, sir." Taken from its context this testimony is completely misleading. His preceding testimony was directed to what he saw while in and as he emerged from the underpass. Immediately following the above quoted questions and answers, he testified as follows: "Q. Did you continue on in your own right-hand lane? A. Yes, sir, I did. Q. Do you know how wide the separate lanes are? A. No, I don't. Q. Was there a complete lane open between the lane you were in, which was the outside lane, and the center line of the boulevard? A. Yes, sir. Q. Did you see that Ray car at all after you came out from the underpass and before the collision occurred? A. Yes, I kept watching it. Q. And what did you observe about it? A. I thought it was going straight ahead. Q. That is

what you thought, but what did you see? A. I saw the car was going straight ahead. Q. Did you see it keep on moving? A. Yes, sir, it was moving. Q. You are sure about that? A. Yes. Q. At what rate was she moving? A. I will say going about the same amount of speed I was going. Q. And what was that? A. About 20 to 25 miles an hour. Q. Were you going 20 to 25 miles an hour when you came out from the underpass? A. I was going about 20. Q. And at what rate was the Ray car going? A. About the same speed. Q. About 20 miles an hour? A. Yes. Q. And at that time it was about the mouth of this intersection, is that right?" At this point the court adjourned for the noon hour. After the recess, Magrino's cross-examination continued as fol-lows: "Q. I think you had just told us that the last you observed the Ray car before the collision it was still headed, as far as you could see, straight up Sawmill Run Boulevard, is that right? A. Not exactly the last time I saw it. Q. Where was it when you last saw it? A. I had started over the intersection and saw it start-ing to make a turn. Q. You saw it turn? A. Yes, sir. Q. You told us this morning you didn't see it change its direction? A. I saw it in that instant, saw it make a left turn, and I had already started into the inter-section and it came over on the left. Q. I want to call your attention to the fact this morning you told us you didn't see it turn at all it was still headed straight along the boulevard, and now you say it made a turn? A. I saw it right before it hit me. Q. Where was it then with reference to the width of the highway? A. When I started into the intersection I noticed she was making a turn. Q. What did you notice about the movement of that car? A. It had turned left. Q. You saw it turn left? A. Yes. Q. Although you told us this morning you didn't? Mr. McGregor: No, he didn't. Q. Who did you talk to during the noon hour? A. Nobody. Q. About this accident, I mean. A. I went out with Mr. Thren-

hauser. Q. Who? A. Mr. Threnhauser. Q. Was your attention called to the fact you had stated you didn't see the Ray car turning at all? A. No, sir. Q. You are sure about that? A. Yes, sir. Q. Do you recall you did testify this morning that— A. Yes, sir. Q. —you didn't see the car turn at all but it was still headed straight along Sawmill Run Boulevard? A. I must have misunderstood, if I said that, because I did see it before it hit me."

Counsel for Mrs. Ray, after further cross-examination, again turned to this only crumb of comfort he obtained in his lengthy cross-examination of this witness and the following questions and answers occurred: "Q. You said this morning that when you came out of the underpass you saw the car and it was still over on its right side of the road, straddling the line? A. Yes. Q. And you did say this morning that you didn't see it make any turn prior to the collision, but this afternoon you have said you did see it make a turn? A. You are talking about when I came out of the underpass? Q. That wasn't what I asked this morning. A. That was what I understood."

In connection with the foregoing testimony, the court also quotes testimony of Magrino on direct examination as follows: " 'I looked at this other car and it was between the two lanes going toward the Liberty Tubes. I never dreamed and didn't have any notice of her making a left turn; . . . I had the light to go through, and had no warning the car would make a left turn.' " The court infers that Magrino was not looking and did not see the Ray car until after the collision. However, when this testimony is quoted without the deletion indicated, it reads as follows: "I looked at this other car and it was between the two lanes going toward the Liberty Tubes. I never dreamed and didn't have any notice of her making a left turn; *and I proceeded to the intersection, started right through, and*

*I was about five feet from the island at the intersection when the car turned and ran into me, didn't give me a chance to do anything.* I had the light to go through, and had no warning the car would make a left turn." (Emphasis supplied)

It is perfectly evident that Magrino's testimony on direct examination and that above quoted on his cross-examination with reference to Mrs. Ray's car going straight ahead, related to what he observed as he was in or just leaving the underpass and before he reached the intersection which was 50 to 55 feet from the underpass. It is also clear that at all times Magrino intended to and did convey the thought that Mrs. Ray, after he had committed his tractor-trailer to the intersection, suddenly turned to her left and crashed into his vehicle. It is exceedingly difficult to conceive of a clearer and more consistent statement of the happening of events than that given by Magrino.

With regard to the testimony of Threnhauser, the court below sets forth in its opinion his direct testimony that the Ray car proceeded east straddling the center line on the Boulevard and as it reached the intersection started to turn and without stopping proceeded directly into the left front of the tractor-trailer. It also cites contradictory testimony of Threnhauser when he made the statement: "The car before it got hit wasn't even making the turn yet." And the testimony immediately following that: "She ran into the trailer." Counsel for Infantino, recognizing the contradiction in Threnhauser's testimony, asked: "Q. Now, Mr. Threnhauser, tell the Court and jury what you saw of this accident? Your answers you have made to Mr. Dickie are entirely different from what you testified in direct examination. Without asking any specific questions will you go ahead and tell what you saw, of the movement of the Chrysler automobile and the truck as you were stopped for the red light?" There-

upon Threnhauser, thus having been confronted with his own contradictory testimony, reiterated his former account that Mrs. Ray proceeded east on the Boulevard and then without stopping turned left and crashed into the front of the tractor. He consistently maintained this version notwithstanding further cross-examination by counsel for Mrs. Ray.

This Court is of opinion that the court below misconceived the true nature and effect of the testimony of Magrino and that in determining the weight of Threnhauser's testimony, wholly ignored a settled principle that where a witness has testified to two different versions or has made inconsistent and contradictory statements and is confronted with that contradiction, his final statement is the one which controls. *Cox v. Wilkes-Barre Railway Corporation*, 340 Pa. 554, 560, 17 A. 2d 367, *Parker v. Matheson Motor Car Company*, 241 Pa. 461, 88 A. 653, *Black, et al. v. Philadelphia Rapid Transit Co.*, 239 Pa. 463, 466, 86 A. 1066.

Except as unjustifiably adduced from the suggested contradictions, it is to be noted that nowhere, either in the opinion of the court below or in the brief of appellee, is there any challenge regarding the honesty of the witnesses nor is there any trial error asserted. No exception is taken to the charge of the court which fairly and properly submitted the issues to the jury, and it is significant that the trial judge in referring to the testimony of Threnhauser said: "While his testimony was rather conflicting at times, as I recall it he did intend to adhere to the statement that the car of Mrs. Ray did make a left-hand turn and collided with the Infantino truck."

Not only is the testimony of Magrino clear, positive and consistent throughout, but it is also inherently probable in view of all the surrounding circumstances. On the other hand, Mrs. Ray's testimony is not con-

vincing and cannot be satisfactorily reconciled with the physical facts disclosed by the evidence. Her testimony reveals a studied attempt at equivocation and contains few positive statements of fact. If her car was struck by this heavy tractor-trailer when she had stopped as she claimed on her side of the road headed east, her car would in all probability have been pushed southwardly into the east-bound lanes instead of coming to a stop in the west-bound lanes 6 feet from the traffic island. The damages to the respective vehicles strongly tend to confirm Magrino's account of the accident since the tractor was hit on its left side behind the bumper. Woodruff Street did not extend south of the Boulevard so that there was no occasion for Magrino to turn left at the intersection. It was most improbable that he would have turned off his proper lane and crossed over to Mrs. Ray's side of the road, since his admitted destination required him to continue west in his own traffic lane.

In view of the foregoing, we are constrained to hold that the court below was in error in concluding that the testimony in support of the verdict in favor of Infantino was "strange and contradictory". To the contrary, the verdict of the jury is amply supported by the testimony of Magrino which was corroborated by the testimony of Threnhauser. Even if we were to disregard the corroborative testimony of Threnhauser, the verdict should nevertheless stand, based upon the testimony of Magrino alone.

The order of the court below granting a new trial is reversed and the record remanded for the entry of judgments upon the verdicts in favor of plaintiffs against defendant, Anette Ray, and in favor of the defendant, Infantino.