## Edelson v. Ochroch, Appellant.

Argued November 17, 1954. Before STERN, C. J., STEARNE, JONES, BELL, CHIDSEY, MUSMANNO and ARNOLD, JJ.

*John J. McDevitt, III,* with him *Norman Paul Harvey* and *Peter P. Liebert, III,* for appellants.

*Henry T. Reath,* with him *Richard E. McDevitt, John B. Martin* and *Duane, Morris & Heckscher,* for appellees.

OPINION BY MR. JUSTICE BELL, January 4, 1955:

Edelson and his two sisters, who were passengers in his car, brought an action against Ochroch Transportation Company and Charles Ochroch and Albert Ochroch, individually, for damages resulting from a right-angle collision at the intersection of Ridge Avenue and Wissahickon Drive in the City of Philadelphia, in which the Ochroch car struck the Edelson car, damaging it and injuring the parties-plaintiff. The defendants Ochroch brought in as additional defendant one of the plaintiffs, Samuel Edelson, who was driving the Edelson car.

There was a direct conflict of evidence; moreover, the testimony of one or more witnesses was contradictory, and as the Court below found, unworthy of belief. The jury found a verdict in favor of the Ochroch Transportation Company and the Ochrochs individually. The jury also found that "the entire negligence lies

with Samuel Edelson" and awarded damages to Ida Edelson in the sum of $12,671. and to Fanny Edelson in the sum of $700. The lower Court granted a new trial as to all defendants.

It will not be necessary to recite the facts; it will suffice to merely quote the following excerpts from the Per Curiam opinion of the lower Court:

"In the face of these contradictions, [by Dupree, the driver of Ochroch Transportation Company's truck] it is difficult to understand how the jury could find that defendant's driver Dupree was not negligent, that Samuel Edelson was and that the negligence of Samuel Edelson alone was the cause of the accident. Where traffic lights are controlled automatically, they do not change in so rapid a succession as in the versions of the occurrence given by Dupree. If the light was green for Edelson when he entered the intersection, he had a right to assume that Dupree would heed the traffic light against him and would not enter the intersection. Jones v. Williams, 358 Pa. 559, 562. Moreover, the evidence showed that Edelson was not relying solely on a favorable traffic light and dispensing with due care in crossing the intersection. See Lewis v. Quinn, 376 Pa. 109. On the contrary, Edelson's uncontradicted testimony showed that he looked up and down Ridge Avenue, observed the lights of a vehicle approaching from the west when it was 135 feet away, [and] that it appeared to be slowing down, . . . .

"While it is not the province of the court to resolve conflicts in the testimony or to usurp the function of the jury, 'it is the duty of a trial court to pass upon the weight of the evidence and to grant or withhold a new trial accordingly': Hershey v. Pittsburgh and West Virginia Railway Company, 366 Pa. 158, 162.

"We are satisfied that the verdicts reached were against the weight of the evidence and that justice re-

quires a new trial. Bellettiere v. Philadelphia, 367 Pa. 638. See also Pendleton v. Philadelphia Transportation Company, 376 Pa. 598; Harris v. Ruggles Lumber Company, 376 Pa. 252; Streilein v. Vogel, 363 Pa. 379. The overwhelming weight of the evidence indicated plainly that the traffic light was in favor of Samuel Edelson and against the Ochroch driver.

"It is our opinion that the verdicts of the jury absolving the original defendant were so clearly against the weight of the evidence that the ends of justice required the granting of a new trial in all the cases."

The rule is well settled that where a trial Judge or Court, who saw and heard the witnesses, grants a new trial, we will not reverse unless there is a clear abuse of discretion or an error of law which necessarily controlled the grant of the new trial or the outcome of the case: *Foster v. Waybright*, 367 Pa. 615, 80 A. 2d 801; *Bellettiere v. Philadelphia*, 367 Pa. 638, 81 A. 2d 857; *Morse Boulger Destructor Co. v. Arnoni*, 376 Pa. 57, 101 A. 2d 705; *Harris v. Ruggles Lumber Company*, 376 Pa. 252, 101 A. 2d 917.

In the *Harris v. Ruggles* case, 376 Pa., supra, the following quotation from page 255 is particularly pertinent: " ' "One of the least assailable grounds for the exercise of such power [to grant a new trial] is the trial court's conclusion that the verdict was against the weight of the evidence and that the interests of justice therefore require that a new trial be awarded; especially in such a case is an appellate court reluctant to interfere." ' ": Bellettiere v. Philadelphia, 367 Pa. 638, 643, 81 A. 2d 857."

We have examined the record and find no palpable abuse of discretion or error of law.

The Order of the Court of Common Pleas granting a new trial as to all defendants is affirmed.

DISSENTING OPINION BY MR. JUSTICE CHIDSEY:

I am compelled to dissent. The majority opinion is a blanket approval of the action of the court below which, in turn, clearly rests upon a usurpation of the constitutional fact-finding function of the jury.

We have been confronted with an increasing number of appeals from rulings of the lower courts wherein new trials have been granted "in the interest of justice" because the verdict was considered against the weight of the evidence. In the recent case of *Decker v. Kulesza,* 369 Pa. 259, 85 A. 2d 413, at p. 263 we said: "While an award of a new trial is an inherent power of the court and its exercise a matter of discretion, the discretion is not an absolute one and it is the duty of this Court to review and determine whether there has been an abuse of discretion: Jones v. Williams, 358 Pa. 559, 58 A. 2d 57; Martin v. Arnold, 366 Pa. 128, 77 A. 2d 99; Stewart v. Ray, 366 Pa. 134, 76 A. 2d 628. In Jones v. Williams, supra, speaking through the late Chief Justice MAXEY, this Court at p. 564 said: 'While this Court usually supports the action of the trial court in granting or refusing a new trial we do not entirely abdicate our reviewing functions in such cases. This Court, too, has the duty to determine from the record whether or not the jury's verdict was so contrary to the evidence as to shock one's sense of justice and to make the award of a new trial imperative so that right may be given another opportunity to prevail.' And see Carroll v. Pittsburgh, 368 Pa. 436, 84 A. 2d 505.". Accordingly we review the record to ascertain whether the court below was justified in granting a new trial: *Bellettiere v. Philadelphia,* 367 Pa. 638, 81 A. 2d 857; *Carroll v. Pittsburgh,* supra; *Decker v. Kulesza,* supra; *Martin v. Arnold et al.,* 366 Pa. 128, 77 A. 2d 99; *Stewart et vir v. Ray et al.,* 366 Pa. 134, 76 A. 2d 628.

It is well settled that a new trial should not be granted because of a mere conflict in testimony or because the trial judge on the facts would have arrived at a different conclusion. It is sufficient to refer to the recent case of *Carroll v. Pittsburgh,* supra.

A careful review of the testimony in this case clearly reveals that the court below unwarrantedly invaded the jury's province and substituted its conclusion for that of the jury. The collision of motor vehicles out of which the action arose occurred on December 29, 1951 at about 7 P.M. in Philadelphia at the intersection of Wissahickon Drive which runs north and south, and Ridge Avenue which runs east and west. At the intersection Ridge Avenue is 35 feet and Wissahickon Drive 135 feet wide between curbs. At the time of the accident it was dark and the roads were wet. The collision occurred on the eastbound lane of Ridge Avenue at the extreme eastern end of the intersection. Samuel Edelson was driving a Buick sedan northwardly on Wissahickon Drive in the easternmost lane of the three lanes for northbound traffic. With him as passengers seated to his right on the front seat were his sisters Fanny and Ida, co-plaintiffs with Samuel in the action. The driver of the Ochroch Transportaton Company tractor-trailer was driving eastwardly on Ridge Avenue. Refus Dittman, an employe of the Fairmount Park Commission, called as a witness by plaintiffs, produced a map or diagram of the intersection and confirmed the above stated dimensions of the intersection, but testified that he knew nothing about the traffic signals. The foregoing facts are undisputed. Samuel Edelson (plaintiff and additional defendant) testified that he was on his way from Media to a destination in Germantown; that he was travelling about 20 miles per hour as he approached the intersection, and nothing in his testimony justified a finding that he had diminished his speed

when without stopping he entered the intersection. There was no corroboration of the speed at which he said he was travelling. The testimony of his sisters threw no light on the happening of the accident. Samuel further testified that as he approached the intersection, a car to his left on one of the northbound lanes had stopped. This car was identified as the car of Thomas D. McBride, a prominent member of the Philadelphia Bar and a disinterested witness, who testified he was in the middle northbound lane and had stopped because the traffic light was against him. Edelson testified that ". . . The instant I went by Mr. McBride's car, I was hit.". Mr. McBride testified that "a bare instant" after the light turned green he started across the intersection, that as he did so ". . . I saw a large truck coming south on Ridge Avenue. At the same time an automobile . . . was proceeding just ahead of me on the Drive. I had not noticed it prior to that moment. It was only a foot or two ahead of me at the time my attention was focused on it. The truck came on and struck the automobile at the driver's seat. . .". Mr. McBride further testified that ". . . after I started up, when the light became green, and had advanced some feet into Ridge Avenue, I saw this truck coming and knew that if I didn't stop it would hit me, and I stopped immediately and it went by me and struck the other car.".

Dupree, the driver of the Ochroch Transportation Company's truck, as established by counsel for the plaintiffs on cross-examination, had been travelling on Ridge Pike for a considerable distance before he came to Wissahickon Drive. In Collegeville, some miles west of the scene of the accident, the driver had noticed a Jones Motor Freight truck travelling east ahead of him. Dupree testified that he was travelling about 100 feet back of the Jones truck; that when his truck was about

150 feet west of the traffic light Dupree noticed the light was turning from amber to red for eastbound traffic on Ridge Avenue; that he saw the Jones truck stop for the light; that after the Jones truck started to move forward across Wissahickon Drive he followed it; that when he had reached the middle of the intersection the light turned from green to amber and by the time his truck was three-quarters of the way across, the light changed to red; that the Edelson car entered the intersection at the extreme eastern edge thereof; that although he immediately applied his brakes, he could not avoid striking the Edelson car. Dupree also testified that it had been sleeting; that the road was "slick", "slippery", and that for that reason he was travelling about 10 miles per hour. The only eye witnesses as to how the accident happened were the respective drivers of the two vehicles involved and Mr. McBride. The plaintiff Fanny Edelson stated, ". . . There was an impact, and that's all I can remember.". The plaintiff Ida Edelson, in answer to the question, "Can you tell us anything about the accident itself?", answered, "No, I can't.".

The majority opinion, after stating, "It will not be necessary to recite the facts . . .", proceeds to quote from and rely upon portions of the opinion of the court en banc wherein, inter alia, the latter states, ". . . The overwhelming weight of the evidence indicated plainly that the traffic light was in favor of Samuel Edelson and against the Ochroch driver.". The record supplies no justification for this statement. Moreover it is a broad generalization that ignores the law applicable to the factual situation presented. That the light was in Edelson's favor (if it was) when he entered the intersection does not absolve him from liability. The driver of an automobile may not rely solely upon a green signal but before entering upon an intersection must look

for vehicles that might be therein. In *Byrne et al. v. Schultz,* 306 Pa. 427, 160 A. 125, we said: ". . . The signal to cross is not a 'command to go, but a qualified permission,' and the qualification is 'to proceed lawfully and carefully,' as a prudent man would under the circumstances, which certainly requires looking to the right and left before entering upon the intersecting street. To hold otherwise, and as contended by defendants, would be to relieve drivers from vigilance and careful driving at street intersections, and license them to drive blindly where traffic is most dangerous. It would greatly increase the peril of street crossings for both pedestrians and motorists. . .". Under the testimony the jury could find, as they undoubtedly did, that the Ochroch truck was within the intersection and Edelson should have waited until it had cleared instead of driving into its path at undiminished speed. It is clear that if he had used the required care and caution exercised by Mr. McBride, the collision would have been avoided. The court below states that Edelson's testimony showed that he looked up and down Ridge Avenue, observed the lights of a vehicle approaching from the west when it was 135 feet away and that it appeared to be slowing down. Aside from the fact that this is inaccurate, for Edelson did not state, nor is it in the evidence, that the truck was 135 feet away when he claimed to have seen it, of more importance is that Edelson did not definitely say where he was when he looked. Patently he did not look at the proper point for observation in view of his testimony that ". . . The instant I went by Mr. McBride's car, I was hit.". In an effort to avoid the consequences of his conduct, Edelson testified that his view was blocked by Mr. McBride's automobile. If this were true, he should have exercised greater caution and slowed down so that he could see. Moreover it is difficult to believe that if he

looked his vision was blocked by the McBride car for there was positive uncontradicted testimony that the Ochroch truck was higher than a passenger car and had three lights on the top of the tractor above the windshield and lights on the four corners of the trailer. In any event, all these considerations were solely for the determination of the jury.

Not only did the court below substitute its judgment for that of the jury with respect to the question of Edelson's negligence, but in like manner disposed of the question of the truck driver's negligence. It completely rejected the testimony of Dupree, Ochroch's driver, that he entered upon the intersection when it was green and that the light did not change to amber or red until he was well across. No witness contradicted Dupree's testimony in this regard and indeed it was corroborated by the testimony of Mr. McBride who started forward a bare instant after the light had turned green for him, at which time he was confronted with the Ochroch truck which was in the intersection and so close at hand that he had to immediately stop his car to avoid hitting it. The court refused to give credence to Dupree's testimony on the ground that the latter had given inconsistent versions with respect to the traffic lights. On direct examination Dupree testified, as above stated, that when he entered the intersection the light was green, that when he was halfway across it changed to amber and when three-quarters of the way across it changed to red. On cross-examination he was asked what was the condition of the light when he *approached* the intersection and he testified that it was changing from amber to red. On further cross-examination, his attention having been called to what might have been regarded as an inconsistency in his testimony, he testified that the light was changing from amber to red as he approached the intersection when he was about 150

feet distant therefrom; that the Jones Motor truck was preceding him on the way to the intersection; that the Jones truck stopped at the intersection and when it started he followed it across the intersection. He reiterated that as he entered the intersection the light was green, changed to amber when he was halfway across and to red when he was three-quarters of the way across. On his direct examination his testimony was confined to the condition of the lights as he entered the intersection. When he was first cross-examined he was asked the condition of the lights as he *approached* the intersection. The three versions elicited were reconcilable and even if they were not, his last version which accorded with his first version, could be regarded by the jury as determinative. Where a witness has testified to two different versions or has made inconsistent or contradictory statements, and is confronted with that contradiction, his final statement is the one that controls: *Stewart v. Ray,* supra; *Cox v. Wilkes-Barre Railway Corporation,* 340 Pa. 554, 17 A. 2d 367; *Parker v. Matheson Motor Car Company,* 241 Pa. 461, 88 A. 653; *Black et al. v. Philadelphia Rapid Transit Co.,* 239 Pa. 463, 86 A. 1066. Dupree's third account really constituted a full and complete explanation of the situation as he moved toward and entered the intersection.[1]

---

[1] At one point in his examination Dupree testified that he was 10 or 15 feet back of the Jones truck when the light turned green. This is pointed to as indicating that the light would not in so short a time have turned red while he was in the intersection. This is conjecture. There was no testimony as to the interval between light changes nor how long the Jones truck stopped at the intersection. Dupree described it as "parked" at the intersection. That Dupree was travelling slowly at about 10 miles per hour is not questioned. At any rate this fragment of testimony, when considered contextually, was susceptible of different interpretations, and was for the jury in connection with Dupree's positive statement that the light changed from green to amber and red after he was well within the intersection.

Charles Thomas who was called as a witness, was driving a car westwardly on Ridge Avenue, and as he approached the intersection observed the traffic light changing from green to amber to red, and stopped. He changed his gears from third to first and when he looked up, the accident had already happened. He did not see it occur. Ochroch's counsel contended that Thomas' testimony corroborated the truck driver's testimony that the light changed from green to red while the latter was in the intersection. Counsel for the Edelsons claimed the inference was to the contrary. Counsel for both parties relied on Thomas' testimony and this affords a perfect illustration of a matter for the jury's determination. Counsel for the Edelsons also relied on testimony of Morris Davidson, a park guard, who was standing at the southwest corner of the intersection and who testified that prior to the accident he observed no traffic in the intersection and the crossing was clear. However, he admitted that he did not see the Edelson car or the Ochroch truck before the collision of which he was not conscious until he heard the impact. His testimony was contrary to that of Mr. McBride which established the presence of the Ochroch truck in the intersection just before the collision. Davidson's testimony shed no light on the important issues raised by the other witnesses.

It has been necessary to discuss the testimony at some length to meet the interpretation placed upon the evidence by the court en banc. After carefully reading and considering the testimony from beginning to end, the writer of this opinion would have no difficulty in arriving at the verdict reached by the jury. This, however, is beside the point for neither this Court nor the court en banc can inject its opinion where the evidence supports the conclusion of the constitutional fact-finding body. It is difficult to understand how the court

below could find the verdict against the weight of the evidence. Surely the verdict does not shock the conscience nor can it be deemed capricious. The fact that it is in favor of the plaintiffs against their brother who was a co-plaintiff and also suffered personal injuries in the accident, and exonerates the transportation company, shows that the verdict was not motivated by sympathy or prejudice. The verdict as rendered is significant in itself. After two hours deliberation, the jury did not merely say that it found the defendant Edelson negligent and the defendant Ochroch not negligent, but stated with emphasis ". . . we have found the entire negligence lies with Samuel Edelson. . .". The resolution of the issues involved depended upon oral testimony as to moving vehicles in connection with changing traffic lights. There were no incontrovertible physical facts. The case was most peculiarly and fittingly one for the jury. In the performance of its duties the jury had an advantage not shared by the court en banc —the opportunity to see the witnesses and evaluate their testimony in the light cast upon it by the unrecordable attributes which are so helpful in determining the weight and credibility of the spoken word. The majority opinion cites cases in one of which the opinion of the Court indicated that the court below was in a better position to pass on a motion for new trial because it enjoyed the advantage of seeing and hearing the witnesses. This observation was unnecessary to the decision and is a vestigial remnant of the reasoning employed when the trial judge alone passed upon motions for a new trial. It is no longer apt. Now the court en banc must hear motions for new trial [2] and obviously the judge or judges (other than the trial judge) have not heard or seen the witnesses. The non-trial judges

---

[2] See *Kearney v. McCauley et ux.*, 360 Pa. 255.

enjoy no greater insight into the witnesses or evidence than does this Court.

In the instant case the very able and experienced trial judge fairly, impartially and comprehensively presented the issues to the jury in a charge to which the Edelsons took no exception. To set aside the verdict rendered is in my opinion nothing less than a judicial abandonment of the right to trial by jury.

Mr. Justice JONES joins in this dissenting opinion.