Millenson *v.* City Stores Company, Appellant.

Argued April 20, 1955. Before Stern, C. J., Stearne, Bell, Chidsey, Musmanno and Arnold, JJ.

*Ralph S. Croskey,* with him *Croskey & Edwards,* for appellant.

*David N. Bressler,* with him *David V. Shapiro* and *Shapiro, Rosenfeld, Stalberg & Cook,* for appellee.

Opinion by Mr. Justice Bell, May 23, 1955:

The Court below granted a new trial on the ground that the verdict rendered for the defendant was against the evidence and against the weight of the evidence, and in the interest of justice. This appeal followed.

The pertinent law is thus stated in *Decker v. Kulesza,* 369 Pa. 259, 263, 85 A. 2d 413: "While an award of a new trial is an inherent power of the court and its exercise a matter of discretion, the discretion is not an absolute one and it is the duty of this Court to review and determine whether there has been an abuse of discretion: Jones v. Williams, 358 Pa. 559, 58 A. 2d 57; Martin v. Arnold, 366 Pa. 128, 77 A. 2d 99; Stewart v. Ray, 366 Pa. 134, 76 A. 2d 628."

Expressed in another way, we will not reverse where the lower Court has granted a new trial for the reasons above set forth ". . . unless there is a clear abuse of discretion or an error of law which necessarily controlled the grant of the new trial or the outcome of the case": *Edelson v. Ochroch,* 380 Pa. 426, 429, 111 A. 2d 455.

Plaintiff brought an action in trespass for assault and battery. The testimony was very brief. Plaintiff, 19 years of age, was employed on April 1, 1952 as a section manager in the subway store of Lit Brothers, which was operated by defendant. One of plaintiff's duties was to handle refunds by issuing credit slips to customers who had returned merchandise. Plaintiff was required to sign his name on the slips before issuing them. Two of these slips, in a handwriting which plaintiff admitted "was practically the same" as his, had been fraudulently issued, returned, and the cash received therefor. Defendant was making an investigation to ascertain who was responsible for the fraud. Plaintiff, at defendant's request, went to the office of the chief detective, a Mr. Smith, where he was shown two credit slips "bearing a facsimile of his signature." He was accused of having issued them for unreturned merchandise. He was then told if he didn't confess to writing out the refund slips that Smith would call the police. Plaintiff denied the

accusation. ". . . I was told to stand up, and then he came over and he *patted* all my pockets and things to see if the credit book was there, and then he asked me to give him my wallet . . . and said there was a credit book missing, that you have to find the credit book." Plaintiff showed him his wallet which contained nothing incriminating. Plaintiff also agreed to have his apartment searched and nothing incriminating was found there. Smith then said he would come down and apologize to plaintiff if he was not guilty. Smith told plaintiff not to discuss the matter with anybody.

Defendant offered no testimony and the jury returned a verdict for defendants.

If plaintiff's evidence was believed, defendant was technically guilty of assault and battery. However, even if it was believed, and the jury did not have to believe it, the "patting" of his pockets was such a trifling battery that the jury realistically gave a verdict to defendant instead of awarding plaintiff 6¢ damages. That did not justify the grant of a new trial.

The Court, in granting a new trial, was impressed by the tactics of counsel for defendant who, while addressing the jury, walked over to counsel for plaintiff, a younger member of the bar, and demonstrated a "patting". "The obvious purpose [said the court below] was to create in the minds of the jury the idea or attitude that a searching or 'frisking' as might have occurred to plaintiff was in no way offensive. . . ." No complaint was made of counsel's actions by opposing counsel or by the Court at the time they occurred, nor did the Court mention the alleged improper action in his charge to the jury. We need not decide whether the conduct of defendant's counsel was ethical and fair, certainly in our opinion it was not so unfair or prejudicial as to justify the granting of a new trial.

We are of the opinion that, under the evidence in this case, it was a clear abuse of discretion to grant a new trial.

Order reversed.

---

DISSENTING OPINION BY MR. JUSTICE MUSMANNO:

I would affirm the lower Court's granting of a new trial. Mr. Smith, Chief of Detectives for the defendant City Stores Company, did not deny that he threatened the youth Jon Millenson with police action unless he confessed to a crime he did not commit. Smith did not deny that behind the armor of this threat he accused the plaintiff of having taken a "credit book" and having fraudulently issued credit slips to a female confederate. He did not deny that he felt the plaintiff's person to look for the missing credit book, nor did he deny that finding in the plaintiff's wallet pictures of the plaintiff's mother and girl friend he insultingly asked how they were connected with the crime.

All of this insolent conduct on the part of the store detectives was an attack on the plaintiff's good name which cannot be taken lightly:

"He that filches from me my good name
Robs me of that which not enriches him,
And makes me poor indeed."

Although Mr. Smith stated that if it was proved that Millenson was innocent he, Smith, would apologize, there is no evidence that he did so apologize, although Millenson's innocence was conclusively established. Perhaps the plaintiff is unduly sensitive, but it is part of a man's rights to be sensitive about an unjustified humiliating experience. The plaintiff could have belonged to that class of people who, in the words

of Edmund Burke, possessed "that chastity of honor which felt a stain like a wound."

The Court below concluded that that stain of dishonor which the unjust accusation inflicted had not been washed clean and, accordingly, in the interests of justice ordered a new trial.

I would affirm that order.