Wolansky *v.* Lawson, Appellant.

Argued March 19, 1957.   Before JONES, C. J., BELL, CHIDSEY, MUSMANNO, ARNOLD, JONES and COHEN, JJ.

*Charles G. Sweet,* for appellants.

*Vincent R. Massock,* for appellee.

OPINION BY MR. CHIEF JUSTICE JONES, June 28, 1957:

This action in trespass was instituted by the plaintiff to recover damages for personal injuries and property damage suffered in a collision between his automobile and a small truck owned by the defendants and operated by their employee. The defendants counterclaimed for property damage to their vehicle. Upon trial of the issues, the jury returned a verdict for the plaintiff in the sum of $50,000. The defendants moved for judgment n.o.v. and for a new trial. The court denied the motion for judgment n.o.v. and conditioned its refusal of the motion for a new trial upon the plaintiff's filing a remittitur for so much of the verdict as was in excess of $27,399.85. A remittitur was accordingly filed and judgment was entered for the plaintiff on the verdict as thus reduced. The defendants have severally appealed.

The defendants are clearly entitled to a new trial and their motion therefor should have been granted. There was basic trial error in the court's submission to the jury of the self-repudiated testimony of two witnesses for the plaintiff and the verdict was, moreover, plainly against the weight of the evidence.

The plaintiff offered as witnesses to the collision, which gave rise to the action, two boys who were fourteen years old when the accident occurred and seventeen at the time of trial. They testified in chief in a way that exonerated the plaintiff from fault for the collision and placed the blame on the defendants. Shortly after the happening of the accident, one of these boys had given his version of the occurrence in a written statement which was completely at variance with what both of them testified to for the plaintiff

at trial. After the witness, who had given the statement, had been cross-examined in respect thereto, the two of them together communicated (while the trial was still in progress), with a local policeman who informed defendants' counsel that both of these witnesses desired to repudiate the testimony they had given in the plaintiff's case. When this fact was made known to the trial judge, he permitted defendants' counsel to call these witnesses for the purpose of allowing them to recant their earlier testimony; and, that, they did. Notwithstanding the recantation, the court submitted the case to the jury on the basis of all of the evidence adduced by the plaintiff, including the repudiated testimony of the two witnesses. Obviously, the only substantive testimony in the case from the two recanting witnesses was what they last gave. That is true even where a witness' testimony is merely contradictory if the conflicts therein are called to his attention and he is asked and answers which of them is correct.

In *Black v. Philadelphia Rapid Transit Co.*, 239 Pa. 463, 466, 86 A. 1066, the rule was given expression and applied in the following language: "The plaintiff's attention was called to the contradictions in his testimony and the irreconcilable statements he had made were pointed out to him and he was asked which of them were correct. His final statement of the fact is that by which his case must be judged and as it showed contributory negligence, a nonsuit was properly entered." In *Parker v. Matheson Motor Car Company*, 241 Pa. 461, 467, 88 A. 653, Mr. Justice Moschzisker recognized for this court that in the *Black* case "we ruled that when a plaintiff makes conflicting statements which are expressly called to his attention, his final statement of fact is the one by which his case must be judged, and if that destroys his right of action the case cannot go to the jury. . . ." More recently, Mr. Justice

Chidsey, speaking for a unanimous court in *Stewart v. Ray,* 366 Pa. 134, 143, 76 A. 2d 628, said that it was "a settled principle that where a witness has testified to two different versions or has made inconsistent and contradictory statements and is confronted with that contradiction, his final statement is the one which controls. [citing cases]" Cf. also *Cox v. Wilkes-Barre Railway Corporation,* 340 Pa. 554, 560, 17 A. 2d 367, and *Mulligan v. Lehigh Traction Company,* 241 Pa. 139, 140, 88 A. 318. The rule is of course all the more applicable where the witness positively repudiates his earlier testimony.

It follows that the verdict for the plaintiff, which the jury was permitted under the trial judge's instructions to find on the basis of the testimony which the witnesses for the plaintiff later recanted, cannot properly be allowed to stand.

Without the testimony given for the plaintiff by the recanting witnesses, his case was notably weak. All that was left of it was the testimony of the plaintiff himself, whose credibility was seriously impeached, his so-called *res gestae* statement (viz., "he crowded me") which was nothing more than a self-serving calculated declaration, and certain testimony relating to marks on the road and the position of the vehicles following the collision. Opposed to this, there was a wealth of apparently credible testimony from disinterested witnesses indicating that it was the plaintiff's negligence that caused the accident.

In passing upon whether the verdict was against the weight of the evidence, the court en banc did so in the mistaken idea that "On a consideration of whether a verdict is against the evidence, all the evidence must be read in the light most favorable to the party in whose favor the verdict is rendered: [citing *Tomko v. Feldman,* 128 Pa. Superior Ct. 429]." The expression

in the *Tomko* case, upon which the court en banc relied as support for its statement, was clearly an inadvertence, motions for judgment n.o.v. and for a new trial having there been commingled for purpose of discussion. *Lessy v. Great Atlantic & Pacific Tea Co.*, 121 Pa. Superior Ct. 440, 183 A. 657, cited in connection with the statement made in the *Tomko* case, was specifically limited to the consideration of a motion for judgment n.o.v. where the rule stated does apply. See footnote in *Sherman v. Manufacturers Light and Heat Company*, 389 Pa. 61, 68, 132 A. 2d 255, where it is correctly said that "It is sometimes erroneously contended that in considering the grant or refusal of a new trial, just as in a consideration of an appeal from the refusal to take off a nonsuit or from the entry of a judgment non obstante veredicto, all of the evidence must be taken in the light most favorable to the verdict winner. Of course this is not the correct test on an appeal from the grant or refusal of a new trial: [citing numerous cases]."

Furthermore, the verdict in the sum of $50,000 was shockingly out of line with the evidence in the case. That it was exorbitant in the opinion of the court below, is manifest from its action in directing that a remittitur be filed for so much of the verdict as was in excess of $27,399.85 on pain of the award of a new trial. Such extensive judicial paring only goes to confirm that the jury could have done little serious thinking in arriving at a just sum as representing the damages.

Judgment reversed and a new trial awarded.

Mr. Justice COHEN concurs in the result.

---

DISSENTING OPINION BY MR. JUSTICE MUSMANNO:

Sending this case back for a re-trial conflicts with the fundamental principle of our whole legal system

that controverted factual issues are to be decided by the jury, and, in this case, they have been so decided. To compel the Court and the parties in Washington County to re-assemble, to compel the witnesses to re-testify, the lawyers to re-argue, and the Court and jury to re-decide what has already been decided—when it is entirely unnecessary—is to make of the processes of law a carousel which may divert and entertain both passengers and lookers-on but can never impress anyone of a capacity to get to any place other than where it presently is.

The Majority Opinion orders a new trial principally because of what it calls the "self-repudiated testimony of two witnesses for the plaintiff." What are the facts in this case, particularly insofar as they pertain to these two witnesses? On September 27, 1951, Herman Wolansky, the plaintiff, was driving a Dodge automobile southwardly on Route 18, travelling from Florence to Burgettstown, when it collided with a jeep owned by the defendants and driven by a Charles Slopek travelling in the opposite direction. The collision occurred at or near a curve in the road. It was the contention of the plaintiff that Slopek abandoned his side of the highway and came over to Wolansky's side. It was the contention of the defendants that Wolansky departed from his side of the highway and came over to Slopek's side. Each motorist claimed he was on his own half of the road. Obviously, if both told the truth in this respect, the accident would never have occurred. But it did occur, and the plaintiff was seriously injured. And the defendants' jeep sustained certain damages. Both sides sued each other, and the case came on for trial in the Court of Common Pleas of Washington, presided over by an able trial judge, and tried by able and experienced counsel on either side. After many days of taking testimony, the lawyers summed up to

the jury, the Court charged, and the jury brought in a verdict of $50,000 in favor of Wolansky as against both defendants, and a verdict in favor of Wolansky in the defendants' suit against him. The Court ordered the verdict reduced to $27,399.85, which reduction the plaintiff accepted, and the defendants appealed, seeking judgment n.o.v. or a new trial.

In presenting his case to the jury the plaintiff called to the witness stand two young men, Duane Cook and Charles Thomas, 17 years of age at the time of the trial, 14 when the accident occurred. These two youths testified that they were standing in front of a farm machinery establishment some 20 or more feet from the highway when they saw Wolansky's car come around a curve, a foot or two over the center dividing line, and then swing back to its own side of the road where a few moments later it was struck by the defendants' jeep. If the two cars followed the respective trajectories outlined by these two witnesses, there can be no doubt that their testimony added considerable support to the case of negligence against the defendants.

Four or five days after the young men had testified as indicated, they were recalled to the witness stand by defendants' counsel, and they now testified that their previous testimony was incorrect and that at the time of the impact, Wolansky was on his wrong side of the road. The only reason assigned for the change in story was spoken by Charles Thomas who said "it was going around town we got bribed." He did not say that they actually were bribed, he did not say that anyone attempted to bribe them, he did not say that anyone asked either of them to tell an untruth. At the beginning of his cross-examination (when he testified the second time) he was asked by plaintiff's counsel: "Who told you to testify falsely the other day, Charles?" and he replied: "You did." However, the

witness later said that when plaintiff's counsel had asked him in his office on what side of the road the accident had occurred he voluntarily replied that it had happened on Wolansky's side of the road.

This Court says that there was "basic trial error in the [trial] court's submission to the jury of the self-repudiated testimony." The Majority Opinion does not say what, under the circumstances, the Trial Judge should have done. Should he have instructed the jury to disregard the testimony of the two witnesses as first given, and accept only the second version? Or should the Trial Court have directed the jury to disregard both versions and treat the witnesses as if they were non-existent?

I believe that the Trial Court acted in the only way open for it to act, short of declaring a mistrial. It left to the jury the question as to whether the boys were lying on their first or second appearance on the witness stand. The Majority Opinion advances the rather strange doctrine that a self-contradicting witness invariably tells the correct story the second time he relates it. In other words, if a man is a liar, he is not to be believed on Monday, but he can be believed on Tuesday. If it is established that he is a prevaricator, his words are to count for naught in the morning, but they may be accepted as gospel in the afternoon. What kind of logic is that?

Of course, it would be a different matter if it had been proved by questioning of the boys or by extraneous evidence that they were induced to tell a story contrary to truth, or if, by other evidence, it became clear that in their first version they told a falsehood. But the record is devoid of such evidence. The Majority Opinion simply arbitrarily declares that the witnesses were lying the first time they testified. It does not state in what manner the first story was tainted with

incredibility and the second story measured up to every standard of incontrovertible truth.

One of the witnesses, Duaine Cook, had signed a statement shortly after the accident. In Court he was confronted with that statement and he declared "The statement is not true. The accident happened the way I said it this morning." The Majority Opinion assumes that the written statement gave a correct version of the accident but it is to be noted that when Cook testified the second time he could not explain the difference between "curb" and "curve" as those two words appeared in the statement: "Q. Well now, would you say when I read these two sentences to you that you still mean near the curb, 'This jeep was on its right side of Route 18 and close to its right curb,' and the next sentence, 'This jeep was near this curve in the road just at that time'? Now, did you mean near the curve, meaning the bend, or—A. The curb. Q. Well, why did you use two different sentences using two different words to mean the same thing? A. I don't know."

It is to be noted also that the written statement has Cook saying: "Just then I saw a jeep traveling 20 miles per hour northbound on Route 18 as it passed the front of the Colteryahn store." However, on his second appearance on the stand he said: "I don't know how fast the jeep was going, I didn't see it that long."

The Majority Opinion calls the boys' second version of the accident a "recantation," but calling it a recantation does not sanctify it. The Majority Opinion says: "Notwithstanding the recantation, the court submitted the case to the jury on the basis of all of the evidence adduced by the plaintiff, including the repudiated testimony of the two witnesses. Obviously, the only substantive testimony in the case from the two recanting witnesses was what they last gave."

But in the whole record there is no evidence that the boys had a greater motive for lying the first time than they did the second time. Why should honest people be compelled to take the word of an acknowledged equivocator as to when he is telling the truth?

What will happen at the second trial? Obviously the boys will be called as witnesses by the defendants, unless by that time they decide again to testify for the plaintiff. But, assuming they will be called by the defendants, certainly it will be demonstrated in cross-examination that when they first testified in the original trial they told a story contrary to what they will now be relating. The whole first story will be unfolded before the jury. What will happen then? Both lawyers will argue as they did at the first trial, the plaintiff's lawyer contending that the first story was correct, the defendants' lawyer contending that the second story is correct. And how will the Judge charge? He will instruct the jury to decide which story is the correct one. And how will that trial differ from the one which has just been completed at great expense to the taxpayers, at great inconvenience to jurors and witnesses, and at the price of travail and anguish on the part of both parties. What can happen at the new trial which has not already happened?

There can be no doubt that one of the versions of the accident given by the two witnesses in controversy is bound to be false. But there is no way, other than the method already adopted, for determining which story is false. What this Court said in the case of *Miller v. Harris*, 349 Pa. 55, 57, could well be said here: "It cannot be determined as a matter of law which one of these interested witnesses did not tell the truth. It is evident that one of them concocted a story which was false in all essentials. As between them, on questions of veracity and credibility, only a jury could

decide. In such a situation it would do no good to grant a new trial, because if another jury returned an opposite verdict—one for the defendant—we would be no nearer the solution of certainty than we are now, and such action might be unfair to plaintiff. On these facts only a jury can decide the question of negligence."

It cannot be imagined that in a re-trial the defendants will be able to press for a verdict with any more vigor than they did at the first trial. In spite of all the "recantations", the jury still believed the plaintiff's account of the accident. That the jury was not too impressed with the "recantation" is eloquently demonstrated in the fact that they returned a verdict for the plaintiff in the sum of $50,000.

In the final analysis, the only issue in this case is one of credibility. That issue was decided fairly and squarely. Why cause the whole dramatis personae in this case to mount a carousel?