## Hartigan, Appellant, v. Clark.

284

Argued March 25, 1957.   Before JONES, C. J., BELL, CHIDSEY, MUSMANNO, ARNOLD, JONES and COHEN, JJ.

*Harry Alan Sherman,* for appellant.

*H. A. Robinson,* with him *Dickie, McCamey, Chilcote & Robinson,* for appellee.

OPINION BY MR. JUSTICE BENJAMIN R. JONES, June 3, 1957:

The appellant, William Hartigan, brought an action of trespass in the Court of Common Pleas of Allegheny County to recover damages for injuries he allegedly incurred in a fall down some stairs in the McKeesporter Hotel in the city of McKeesport.

The action was originally brought against John P. Hoerr, the owner of the hotel; upon his death Alyce

Hoerr Clark, Administratrix of his estate, was substituted as defendant. The jury returned a verdict in favor of appellant in the amount of $20,000. The learned trial judge, the Honorable RUSSELL H. ADAMS, died before appellee's motions for judgment n.o.v. and for a new trial were argued. The court en banc, consisting of two judges, refused appellee's motion for judgment n.o.v. but granted her motion for a new trial. This appeal was then taken from that order.

Appellant testified, at trial, that on April 9, 1952, he entered the McKeesporter Hotel at about 5:30 p.m., intending to take his evening meal in the hotel dining room. He stated that he had not had anything to eat or drink all day. Upon entering the hotel, he decided that he would visit the lavatory before ordering his meal. The lavatory and the cocktail lounge of the McKeesporter are located on the basement level; to reach them it is necessary to descend stairs from the lobby level. Appellant testified that there was no light over the stairs; that there was merely a "greenish-cast" light emanating from the basement level. He stated that this light showed the steps to be a light colored material which appeared worn but that he could not see the condition of the metal strips binding the front edges of the steps. After taking one complete step down from the landing he testified that he put his left foot on the second step whereupon his right toe caught in the edging of the first step and caused him to fall and suffer the injuries of which he complains.

Appellant's daughter testified that, on the day following the accident, she and her husband went to the hotel and inspected the stairs. She stated that the metal strip on the front edge of the first step below the landing was "curled upward" in the form of a hook about one-half inch in height for a distance of about 12 inches along the edge of the step and that

the metal strips edging that step and other steps were worn. Her husband did not testify at trial.

Appellee's witnesses gave an entirely different version of the happening of the accident and of the condition of the premises at the time of the accident.

The bartender who was on duty in the cocktail lounge at the time of the accident testified that he observed appellant coming down the steps between 6:30 and 7:00 p.m.—at least an hour later than appellant had testified. According to his testimony he could see approximately a foot and one-half above the landing and saw appellant reel or stagger, stop for a period of 30 seconds or so, and then collapse and fall. This testimony was substantially corroborated by a patron of the bar who observed the fall in a mirror behind the bar. Both witnesses testified that appellant smelled of alcohol when they went to give him aid. The doctor who treated appellant when he first arrived at the hospital testified unequivocally that appellant was under the influence of alcohol.

The bartender, the hotel housekeeper, the manager of the hotel, and a man employed to scrub the steps all testified that the steps were in good condition and were adequately lighted at top, bottom and at the landing. The hotel manager testified that the steps had been newly covered in October, 1951—seven months before the accident—with a dark material and this testimony was corroborated by the manager of the firm which had installed the covering who also stated that he had examined the steps prior to trial and found them in excellent condition. In addition, a former chief of the McKeesport police force, one of the two police officers who visited the premises in response to an emergency call on the night of the accident, testified that he had examined the steps and found them lighted and in good condition.

Appellee assigned as reasons in support of his motion for a new trial that the verdict was against the weight of the evidence, the verdict was excessive, the verdict was captious and not based on evidence of probative value, the trial judge committed error in limiting appellee's examination of one of her witnesses and the trial judge committed error in charging the jury concerning lost earnings, loss of earning capacity and loss of future earnings when appellant's testimony did not contain sufficient evidence concerning these matters.

In its opinion, the court en banc stated: "After a careful review of all the testimony we are of the opinion that the testimony in behalf of the defendant was so strong and clear and from disinterested witnesses that in the interests of justice a new trial should be granted."

*It is abundantly clear that the court en banc proceeded upon the theory that the verdict in favor of appellant was against the weight of the evidence;* that being so, the court then concluded that the interests of justice required a new trial.

In *Mozino v. Canuso,* 384 Pa. 220, 223, 120 A. 2d 300, Mr. Justice (now Chief Justice) Jones stated for this court: "One who appeals from the grant of a new trial assumes a very heavy burden indeed. Before we will reverse, the appellant must be able to show that the trial court was guilty of a palpable abuse of discretion or acted on an erroneous rule of law which, in the circumstances, controlled the outcome of the case and is certified by the trial court as the sole reason for the granting of a new trial." See also: *Edelson v. Ochroch,* 380 Pa. 426, 111 A. 2d 455; *Clewell v. Pummer,* 388 Pa. 592, 131 A. 2d 375.

We are unable to find any palpable abuse of discretion in the lower court's disposition of the motion. "One of the least assailable grounds for the exercise of such

power is the trial court's conclusion that the verdict was against the weight of the evidence and that the interests of justice therefore require that a new trial be awarded; especially in such a case is an appellate court reluctant to interfere": *Frank v. W. S. Losier & Co., Inc.*, 361 Pa. 272, 276, 277, 64 A. 2d 829.

In *Beal v. Reading Company*, 370 Pa. 45, 49, 87 A. 2d 214, this court held that a trial court must give reasons for its action in granting a new trial and mere conclusions, such as "interests of justice" are insufficient to sustain such an action. This court has a definite duty to review the record and determine therefrom "whether or not the jury's verdict was so contrary to the evidence as to shock one's sense of justice and to make the award of a new trial imperative so that right may be given another opportunity to prevail": *Jones v. Williams et al.*, 358 Pa. 559, 564, 58 A. 2d 57.

In the instant case appellant had only his own testimony and that of his daughter to establish appellee's liability. This testimony was strongly contradicted in every important respect by four employees of appellee and their testimony, in turn, was corroborated completely by a number of wholly disinterested witnesses. In such circumstances we are unable to conclude that the court en banc abused its discretion in holding that the testimony in behalf of appellee was so strong and clear and from such disinterested witnesses that in the interest of justice a new trial should be granted.

While a lower court's discretion in the granting of a new trial is not absolute and may be abused, it nevertheless remains true, as Mr. Justice MUSMANNO stated in *Walters v. DeFelice & Son, Inc.*, 381 Pa. 433, 435, 113 A. 2d 218, quoting from the case of *Maloy v. Rosenbaum Co.*, 260 Pa. 466, 472, 103 A. 882: " 'While

the ascertainment of the underlying facts, and the drawing of the inferences and final conclusions therefrom, are for the jury, even where strong conflicting oral evidence is produced by a defendant, yet, in every such instance, a grave responsibility rests upon the trial judge to see to it that no verdict contrary to the weight of the evidence or shocking to judicial conscience is allowed to stand, no matter how many new trials must be granted in order to effect the ends of justice . . .' "

Judgment affirmed.

---

DISSENTING OPINION BY MR. JUSTICE MUSMANNO:

On April 9, 1952, at about 5:30 p.m., the plaintiff in this case, William Hartigan, while descending a flight of stairs in the McKeesporter Hotel in McKeesport, tripped when his foot caught on the edging of the first step, causing him to fall to the bottom of the stairs. His daughter examined the steps the following day and discovered at the edge of the first step a metal strip curled back in the form of a hook. The plaintiff testified that the ceiling above the steps was bare of illumination and it was his contention that the bad lighting plus the defect in the covering of the steps brought on the injuries of which he complains. The proprietor of the hotel presented several witnesses who testified, among them, that the stairs were in good condition and that the plaintiff was under the influence of intoxicating liquor at the time he fell.

The jury returned a verdict in favor of the plaintiff in the sum of $20,000. The defendant moved for judgment n.o.v. and new trial. While the motions were pending, the Trial Judge died. The motions were then argued before a court en banc which reversed the

verdict and ordered a new trial. The plaintiff appealed, and the Majority of this Court has affirmed the order for a new trial.

Although the defendant had more witnesses than the plaintiff, the resulting issue could only be one of fact for the jury to decide. In the case of *Rauch v. Smedley,* 208 Pa. 175, where the woman plaintiff was injured by a heavy lumber wagon, the trial judge directed a verdict in favor of the defendant owners of the wagon. The plaintiff appealed and this Court reversed. Mr. Justice FELL, speaking for the Court, said: "Where the testimony offered by the plaintiff makes out a prima facie case by showing the existence of facts from which an inference of negligence arises, the case is necessarily for the jury, *notwithstanding that the great preponderance of the testimony is with the defendant.* An inference of negligence having once arisen remains until overcome by countervailing proof, and whether it is so overcome is a question for the jury."

It was argued in that case, as it is here, that the witnesses for the defendant were without interest in the result of the trial. This Court held that the issue was still a question for the jury: "The defendant's witnesses presented the occurrence in an entirely different light, and in one that wholly relieved the driver from blame. As these witnesses were without interest in the result of the trial, and had the best opportunity to observe what took place, their testimony should have great weight with the jury; *but its only effect was to raise a controversy as to the facts, which the jury alone could decide.*"*

The factual issue in the case at bar was submitted to the jury by the Trial Judge: "If you find from the

---

* Italics mine, unless otherwise indicated.

description of this step by Mrs. Link that the metal part actually was turned up for half an inch or so right after this fall, then you can consider whether that condition which would permit a person's foot to catch the metal strip existed there long enough before that the defendants, in the exercise of reasonable care, should have discovered it. If the strip was loose and if the edge of the strip extended above the linoleum, if it created a dangerous risk to one who might step down those steps, and if that existed there long enough that the defendant should, in the exercise of reasonable care, have discovered it, and if they did not discover it or if they did discover it and didn't exercise reasonable care to make the condition safe, then you could find that the defendant in this case was negligent, and if you believe the testimony of the plaintiff and his witnesses that it was that condition which caused his fall, then it would be proper in this case to bring in a verdict for him provided the plaintiff himself was not guilty of contributory negligence." No one argues that the jury did not understand this unmistakably clear language.

In attempted support of its decision sending this case back for a new trial, the Majority Opinion says: "While a lower court's discretion in the granting of a new trial is not absolute and may be abused, it nevertheless remains true, as Mr. Justice MUSMANNO stated in Walters v. De Felice & Son, Inc., 381 Pa. 433, 435, 113 A. 2d 218, quoting from the case of Maloy v. Rosenbaum Co., 260 Pa. 466, 472, 103 A. 882: 'While the ascertainment of the underlying facts, and the drawing of the inferences and final conclusions therefrom, are for the jury, even where strong conflicting oral evidence is produced by a defendant, yet, in every such instance, a grave responsibility rests upon the trial judge to see to it that no verdict contrary to the

weight of the evidence or shocking to judicial conscience is allowed to stand, no matter how many new trials must be granted in order to effect the ends of justice. . .' "

I did write the Opinion for the Court in the case of *Walters v. De Felice*, but that case in point of legal principle involved, is as far away as Jupiter, as will quickly be manifested. In the *Walters* case the plaintiff sued a contracting company which had damaged his land, through blasting operations, in the construction of a highway. The jury returned a money verdict in favor of the plaintiff and the defendant company moved for a new trial and judgment n.o.v. Before the Court could pass upon these motions, the court stenographer who had reported the trial died, leaving his notes untranscribed. Since apparently no one else could read the deceased reporter's shorthand, the Court *sua sponte* ordered a new trial which resulted, this time, in a verdict for the defendant. The Trial Court ordered a new trial and, in affirming that order for a new trial, we said: "It was no fault of the plaintiff that the dead hand of the deceased reporter wiped away the verdict which he had legitimately won. The trial of a lawsuit is not a game or gamble with either side gaining fortuitous advantages not based on legal principle or equitable consideration. The courtroom is not a gridiron where a fumble can be seized by the opposite side and, regardless of intrinsic merit, go on to score a victory with it. As the matter now stands, two juries, considering practically the same evidence, have brought in contrary verdicts. The learned Trial Judge concluded that in this state of affairs, conscience and duty required him to order a new trial. He said: 'If the trial court has a view, amounting to a conviction, that justice has not been done, that tribunal has a remedy which it should not hesitate to apply. We

have such conviction in this case. It is not because of error in the second trial, but because of a failure of the judicial system to function completely in the first trial of the case that a litigant has had an equal division of opinion among twenty-four jurors. We believe another jury should resolve the question.' "

In the *Walters* case the Judge, whose words I quoted, personally presided over both trials, and, because of the very unusual circumstances related, elementary justice dictated a new trial. In writing the Opinion of the Court, I quoted from a statement made by Justice (later Chief Justice) VON MOSCHZISKER in the case of *Maloy v. Rosenbaum Co.,* 260 Pa. 466. In that case, the plaintiff had been injured in an automobile accident and he sued the owner of the car. The jury returned a money verdict in favor of the plaintiff, and this Court, refusing judgment n.o.v. or a new trial, affirmed the judgment. In the course of affirming the judgment, Justice VON MOSCHZISKER made an observation, not determinative of the issue, which I thought illustrative of the responsibility devolving upon the Trial Judge in the *Walters* case where the court stenographer died, and I quoted it.

The *Walters* case, therefore, in its astronomical distance from the issue involved here, is scarcely authority for the case at hand where the new trial was ordered, not by the Judge who presided over the trial, but by two Judges, able and conscientious as they are, who never saw the witnesses, did not hear a word of the testimony, and are no closer to the case than we are. Thus, if a new trial is to be granted, it is to be granted not on any theory that an appellate court should uphold the decision of the Trial Judge who heard the case.

Although, so far as the spatial reaches of relevancy are concerned, the case of *Mozino v. Canuso,* 384 Pa.

220, also cited by the Majority here, is not as far away as Jupiter, it still does not come any closer than Mercury. In that case the plaintiff sued in assumpsit to recover damages because of the defendant partnership's alleged breach of an oral contract whereby the partnership was permitted to dig and remove fill from land of the plaintiff at so much per cubic yard with the further understanding and agreement that any rock encountered in the operation would be removed by the defendants and that the digging would be done in such a manner that, when completed, the surface of the ground would be left in a smooth and even grade. The partnership consisted of Francis A. Canuso and Francis A. Canuso, Jr., trading and doing business as Francis A. Canuso and Son. After issue had been joined, Francis A. Canuso, Sr., died, and at the ensuing trial the plaintiff offered himself as a witness. The defendant objected, citing the Dead Man's Rule. The Court allowed the plaintiff to testify and the plaintiff recovered a verdict. The Trial Court granted a new trial on the ground that, one of the parties of the defendant firm having died, the plaintiff was an incompetent witness under the Act of 1887 and should not, therefore, have been permitted to testify. Other reasons had been assigned for a new trial but the Trial Court did not touch upon those reasons. We affirmed the order for the new trial. Insofar as the issue before this Court in the current case is concerned, the *Mozino* case is *generale nihil certum implicat*. The only possible similarity between the *Mozino* case and this case is that they both had judges and juries.

Nor do I understand on what theory the Majority cites the case of *Beal v. Reading Company*, 370 Pa. 45, since the decision in that case was directly the opposite of the one announced by the Majority in the case before us. In the *Beal* case the lower Court

ordered a new trial, but this Court *reversed* the order granting a new trial.

The Majority Opinion in the case at bar says: *"It is abundantly clear that the court en banc proceeded upon the theory that the verdict in favor of appellant was against the weight of the evidence;* that being so, the court then concluded that the interests of justice required a new trial." (Italics in original) This Court has today affirmed a new trial on the basis of this statement. It was not always thus. In 1951, when the writer of this Dissenting Opinion was a Judge of the Court of Common Pleas of Allegheny County, he ordered a new trial in the case of *Carroll v. Pittsburgh,* 368 Pa. 436, because he believed that the verdict in favor of the appellant *was against the weight of the evidence and that, therefore, the interests of justice required a new trial.* This Court, upon hearing argument, reading briefs and record, reversed the order granting a new trial, asserting: *"It would therefore seem clear that there was a palpable abuse of discretion in the court's granting a new trial on the ground that the verdict was contrary to the evidence (meaning presumably the weight of the evidence) and that in the interest of justice a new trial should be had."*

Consistency thou art a jewel.