LUCILLE GEBHARDT, PLAINTIFF-APPELLANT, AND HARRISON W. GEBHARDT, PLAINTIFF, v. PUBLIC SERVICE COORDINATED TRANSPORT, A CORPORATION OF THE STATE OF NEW JERSEY, DEFENDANT-RESPONDENT.

Superior Court of New Jersey
Appellate Division

Argued November 12, 1957—Decided December 3, 1957.

Before Judges GOLDMANN, FREUND and CONFORD.

*Mr. Theodore S. Meth* argued the cause for plaintiff-appellant (*Messrs. Meth & Wood,* attorneys).

*Mr. Louis F. Stein, Jr.,* argued the cause for defendant-respondent (*Mr. Stein,* attorney and of counsel).

The opinion of the court was delivered by

FREUND, J. A. D. Plaintiff appeals from a judgment entered in the Essex County District Court based upon a unanimous jury verdict of no cause of action.

The plaintiff, Lucille Gebhardt, resides in New York and commutes several days a week to Newark, where she is self-employed as an electrologist. She testified to using the defendant's buses from the Pennsylvania Railroad Station to Halsey and Market Streets in the morning and in the reverse direction in the evening. She travels with her one-pound dog, a Chihuahua, carried in a pocket sewn on the shoulders of her summer dresses and, in the winter months, in a pocket sewn on the inside of her coat. She testified, "Instead of wearing a corsage I wear her. She is my little live orchid," and in the summer "I wear her in a vital area that nobody has a right to touch her and she's perfectly safe here." The present controversy arises out of the plaintiff's desire to ride the defendant's buses accompanied by her Chihuahua.

The complaint is in four counts and sets forth three incidents wherein defendant's bus operators were allegedly guilty of actionable conduct. The fourth count is by the plaintiff's husband, *per quod,* and was voluntarily dismissed with prejudice by agreement of counsel.

The first count relates to an incident on July 18, 1955 when it is alleged that while she was lawfully a passenger on defendant's bus the driver "in a rude and offensive way * * * informed the plaintiff that she could not ride in the bus, stopped the bus, announced that the bus would not proceed, stated loudly to other passengers that the plaintiff was delaying the bus, summoned police officers, and demanded the arrest of the plaintiff." Although the driver made no

charge against the plaintiff, he requested the other passengers to give him their names, and stated loudly that "no one could tell what a woman like that (the plaintiff) * * * would say or do." It is further asserted that it was the defendant's duty as a common carrier to accord plaintiff "respectful and courteous treatment and protection against insults, indignities and abuse" by its employees, and that as a result of a violation of this duty she suffered delay, mental anguish, embarrassment and humiliation.

The second count recites an incident on February 2, 1956, when the plaintiff was a passenger in defendant's bus going from the Pennsylvania Station to Halsey Street. She was about to leave the bus and the defendant's driver, in a "loud, rude and offensive tone and manner, told plaintiff that he had previously told her that she could not ride on his bus, and never to board his bus again." There was, however, no allegation of any refusal to accept plaintiff as a passenger on that trip or refusal to transport her to her destination. The gist of the count was merely the driver's remonstrations against the plaintiff. A dismissal of this count was entered by consent of counsel at the conclusion of the plaintiff's case.

The third count relates an incident of February 8, 1956, when the plaintiff tried to board one of defendant's buses but the driver, without just cause, "refused to receive the plaintiff as a passenger, made an offensive gesture in her direction, laughed at her, and closed the door, almost striking the plaintiff's person," and the bus left her standing in the street, when the oncoming traffic frightened her.

At the trial the plaintiff was her sole witness as to the several incidents and she testified substantially in accord with the complaint.

Relative to the first incident on July 18, 1955, she testified that carrying her Chihuahua in a pocket container sewn to her garment, she boarded the defendant's bus. The driver did not notice the dog until after she was on the bus but before she had paid her fare. He then said he "wouldn't drive dogs around" and brought the bus to a stop at the curb, requesting the other passengers to "pile

out." He said she was selfish and he called a police officer. After a discussion with the officer he told the passengers to "pile in." He asked them to sign a card as "you can't tell what a woman like that will say or do" and finally the bus proceeded to the Pennsylvania Station. She told him to take her fare, and threatened him that otherwise she would report him for not accepting fares.

The third count dealt with the incident of February 8, 1956 when the plaintiff was attempting to board a bus standing with its door open at Market and Halsey Streets. She testified "As I put my foot up to stand on the step the driver slammed the door in my face." She said that the operator thumbed his nose and laughed, would not let her on the bus, and when the traffic light changed the bus proceeded without her. She returned to the curb because other vehicles were bearing down on her and frightening her. She testified, on direct examination, as to what her feelings were, saying "I was frightened, embarrassed, nervous." She admitted she did not see a doctor or sustain any financial loss either on this occasion or the others.

At the conclusion of the plaintiff's case the defendant's motion to dismiss was denied as to counts 1 and 3, but was granted as to count 2 by agreement of counsel. In denying the motion for dismissal of the other two counts, the court based its decision on the possibility of nominal damages, despite the lack of any actual damages. The trial judge stated that the theory of the action was "a refusal to take her accompanied by such conduct which caused her damage."

With respect to the incident of July 18, 1955, the defense consisted of the driver's testimony which essentially denied the use of abusive or offensive language. He testified that he explained to the plaintiff the company rules which prohibited animals on its buses. He admitted stopping his bus and asking the passengers to get off while he called the police, and said that the passengers then got on the bus again and he proceeded to the Pennsylvania Station. He testified that during the course of the ride Mrs. Gebhardt

made a remark that she "was going to make an issue out of this case." The defense also consisted of the introduction of its Rules given to drivers governing the operation of its buses. A superintendent of the defendant testified that rules prior to September 1955 did not permit dogs to ride on its buses except when carried in a container, and that in September 1955 the rules were amended to accommodate the plaintiff so that she could carry her dog in her pocket while riding the defendant's vehicles. The rule book was received in evidence and given to the jury when it retired for deliberation.

The defendant submitted no testimony as to the alleged incident of February 8, 1956, claiming to have no record or information thereof.

The motions to dismiss at the conclusion of the entire case were denied. It is observed that no motion was made for a new trial, nor were requests made to the court to charge or objections made to the charge. *R. R.* 4:52–1. The jury took 12 minutes for the consideration of its verdict when it returned a unanimous verdict of no cause of action against the defendant.

The grounds of appeal assert error in the charge to the jury. The plaintiff urges on this appeal that the incorrect conception of plaintiff's asserted cause of action in the charge to the jury and the failure to charge with regard to nominal damages constituted plain error under *R. R.* 1:5–3 (c).

It is a question here of whether or not the claimed errors affect substantial personal rights and constitute plain error that would warrant a reversal. *R. R.* 1:5–3 (c) provides that "The court may notice plain errors affecting substantial rights of a party, although they were not brought to the attention of the trial court." Generally, the rule means prejudicial error denying substantial justice to litigant. It will be applied only sparingly. *Ford v. Reichert,* 23 *N. J.* 429, 435 (1957).

The record submitted to us for consideration discloses, as noted above, that the plaintiff's trial attorney

submitted no requests to charge and failed to object or except to the instruction given to the jury, although given the opportunity to do so. *R. R.* 4:52–1 provides as follows:

"Either before or at the close of the evidence, any party may file written requests that the court instruct the jury on the law as set forth in the requests. At the same time copies of such requests shall be furnished to adverse parties. No party may urge as error any portion of the charge or omission therefrom unless he objects thereto before the jury retires to consider its verdict, stating distinctly the matter to which he objects and the grounds of the objection. Opportunity shall be given to make the objection in open court but out of the presence of the jury."

Therefore, the plaintiff is precluded from questioning the propriety of the charge on this appeal, *Lertch v. McLean,* 18 *N. J.* 68, 73 (1955); *Lippman v. Ostrum,* 22 *N. J.* 14, 26 (1956), unless we find there was plain error. We will proceed to examine the substantive issues with a view toward the applicability of the plain error rule.

The plaintiff argues that the unwarranted infliction of humiliation and embarrassment to a passenger by a carrier's employee is actionable, even without a showing of refusal of passage. The argument is that the trial judge failed to charge the jury as to the first and third counts that plaintiff had a right to recover damages for humiliation, embarrassment and nervousness caused by defendant's employees, even when she was not denied passage; that the issue of liability was confined by the court's charge exclusively to the question of refusal to carry the plaintiff as a member of the public. It can be accepted as a general legal principle that a carrier has a duty to protect a passenger from abusive and insulting language by its agents or employees based on its contractual relationship with the passenger, even where passage is not refused. *Gillespie v. Brooklyn Heights R. Co.,* 178 *N. Y.* 347, 70 *N. E.* 857, 66 *L. R. A.* 618 (*Ct. App.* 1904); *Bleecker v. Colorado & Southern R. Co.,* 50 *Colo.* 140, 114 *P.* 481, 33 *L. R. A., N. S.,* 386 (*Sup. Ct.* 1911); and other cases cited in 15 *A. L. R. 2d* at *pages* 133, 134; 5 *Corbin on Contracts* (1951),

§ 1076, *p.* 360, *n.* 9; 5 *Williston on Contracts* (*rev. ed.* 1937), § 1340*A*, *p.* 3769, *n.* 4; *McCormick, Damages*, § 145, *p.* 592 (1935); *Restatement, Contracts*, § 341, *p.* 559, *comment* (*a*) (1932); 10 *Am. Jur., Carriers*, §§ 1443, 1445, *pp.* 261–263, and § 1676, *p.* 414; 15 *Am. Jur., Damages*, § 182, *p.* 599 *et seq.* Some of the authorities base recovery for humiliation and embarrassment on a theory of *quasi*-tort liability arising out of a special duty owed by the carrier to the riding public. 1 *Harper and James, Law of Torts*, § 9.3, *p.* 670 (1956); *Prosser on Torts* (2*d ed.* 1955), § 11, *p.* 41; *Restatement, Torts*, § 48, *p.* 92 (1934).

■ While we have not been referred to, nor have we found, any New Jersey authority which dealt with the principle of compensation for insult or humiliation apart from refusal to carry, our cases do hold that reasonable compensation for indignity and consequent injury may be considered on the question of damages for breach of obligation to carry. *Allen v. Camden and Philadelphia Steamboat Ferry Co.*, 46 *N. J. L.* 198 (*E. & A.* 1884); *Delaware, L. & W. R. R. Co. v. Walsh*, 47 *N. J. L.* 548 (*E. & A.* 1885); *Runyan v. Central R. R. Co.*, 65 *N. J. L.* 228 (*E. & A.* 1900); *Harris v. Delaware, L. & W. R. R. Co.*, 82 *N. J. L.* 456 (*E. & A.* 1912); *Jiannine v. Pennsylvania R. R. Co.*, 122 *N. J. L.* 395 (*Sup. Ct.* 1939).

■ The relationship between the carrier and passenger is contractual. As a part of this contractual relationship, the law imposes upon the carrier a duty to protect its passengers against injury from abusive language of its agents. There was testimony by the plaintiff, which was denied by the defendant's operator, of the alleged abusive language by the operator, and the court charged the jury that it was the sole and exclusive judges of the facts. It did not charge that recovery could be predicated on humiliation, *etc.*, absent refusal to carry.

■■ The principle of law referred to in *Ward v. West Jersey & Seashore R. R. Co.*, 65 *N. J. L.* 383 (*Sup. Ct.* 1900), argued by the defendant below and relied upon by the trial court, holding that mere fright in the absence of

physical injury affords no ground for recovery, was not here properly applicable. See also *Clayton v. Jersey Central Power & Light Co.*, 19 *N. J. Super.* 546, 554 (*App. Div.* 1952), certification denied 10 *N. J.* 314 (1952); *Landriani v. Lake Mohawk Country Club*, 26 *N. J. Super.* 157, 162 (*App. Div.* 1953). We are not dealing with a case for damages resulting from a subjective reaction to a negligent act or other tort. However, as noted above, the plaintiff's trial attorney tried the case on the theory that the plaintiff was refused passage on the defendant's buses. The trial court took him at his word and charged the jury on that basis. The plaintiff is therefore precluded from arguing a different cause of action on this appeal. *Spear v. Lyndale Manufacturing Co.*, 35 *N. J. Super.* 385, 390 (*App. Div.* 1955); *Lippman v. Ostrum, supra* (22 *N. J.* at *page* 26). Plaintiff's counsel on this appeal may be dissatisfied with the manner in which plaintiff's theory of the case was designedly tried, but he cannot now repudiate the manner in which it was submitted to the jury. 4 *C. J. S. Appeal and Error* § 241, p. 718 *et seq.*; 3 *Am. Jur., Appeal and Error*, §§ 253, 281, 330, *pp.* 35, 55, 372.

In addition to the cause of action relating to the humiliation and embarrassment caused by the defendant's servants on the earlier occasion, the plaintiff alleges that the defendant violated its duty when it refused to accept her as a passenger on the February 8 occasion. The basis of this obligation is well established in the law. 9 *Am. Jur., Carriers*, §§ 285, 286, *p.* 606 *et seq.*; 10 *Am. Jur., Carriers*, §§ 1032, 1033, *pp.* 67, 68; 13 *C. J. S. Carriers* § 538, *p.* 1041. There is no sound reason for denying recovery for mental suffering upon the breach of their obligation. There was no action by the trial court which can be regarded as erroneous in that connection.

We have examined the court's charge and, considering it in its entirety, we find that the basic theory upon which the plaintiff tried her case was refusal to carry with consequent damages and this theory was submitted for the jury's consideration. It is well settled that the entire

charge must be read as a whole to determine whether error has been committed. *Kargman v. Carlo,* 85 *N. J. L.* 632, 638 (*E. & A.* 1914) ; *Vadurro v. Yellow Cab Co. of Camden,* 6 *N. J.* 102, 107 (1950) ; *Rislan v. Frantzen,* 14 *N. J.* 455, 461 (1954). If there was any error, it was induced by trial counsel and it was not such as should be regarded as reversible under the plain error rule.

 We have also considered the plaintiff's argument that the court erred in charging the jury that on February 8, 1956 there was in effect a rule of the defendant which barred the transportation of a dog in a bus, when in fact the rule was modified in September 1955 to permit the plaintiff to carry her Chihuahua in her pocket. The original and amended rules were received in evidence and they were given to the jury to read in considering their verdict. The court instructed the jury that they were to rely solely and exclusively upon their recollection of the testimony. The statement of fact as to the rule was patently erroneous but in view of the admonition of the trial judge, the introduction of the rules in evidence, and the failure to object to the charge, it does not warrant reversal.

 It is further argued that the charge to the jury was plainly erroneous in that it did not state that the jury could return a verdict for nominal damages. In the colloquy on the motion at the end of the plaintiff's case the court several times mentioned that the plaintiff might be entitled to nominal damages and the attorneys were given the opportunity to comment further on the question. Plaintiff's trial counsel remained silent when the suggestion was made and, additionally, failed to submit a request to charge as to nominal damages. *R. R.* 4:52–1.

There was testimony by the plaintiff, when asked as to her feelings on the several incidents, that she was "frightened, embarrassed and nervous." She could have recovered such damages as the jury considered proper from its appraisal of all the evidence, including nominal damages for the technical breach, if it had so determined, but we do not consider the failure of the court on its own initiative to

charge as to nominal damages to deprive the plaintiff of substantial justice, under the circumstances of this case. Generally, a judgment will not be reversed merely to permit the recovery of nominal damages. *Millenson v. City Stores Company*, 382 *Pa.* 39, 114 *A. 2d* 80 (*Sup. Ct.* 1955); Annotation, 44 *A. L. R.* 168, 182 (1926); 3 *Am. Jur., Appeal and Error*, § 1005, *p.* 559; *McCormick, Damages*, § 24, *p.* 95 (1935). On the whole case, we find no just cause for reversal.

Affirmed.