## Neff *v.* Morrison, Appellant.

Argued September 15, 1959. Before RHODES, P. J., GUNTHER, WRIGHT, WOODSIDE, ERVIN, and WATKINS, JJ. (HIRT, J., absent).

*Francis E. Shields,* with him *Frederick H. Spotts,* and *Pepper, Bodine, Frick, Scheetz & Hamilton,* for appellant.

*Maxwell L. Davis,* with him *Herman S. Davis,* and *Davis and Davis,* for appellees.

OPINION BY WATKINS, J., November 11, 1959:

This is an appeal from an order of the Municipal Court of Philadelphia which granted the plaintiff appellees' motion for a new trial. Milton Neff and Louis Neff, trading as Milton Neff, the appellees, filed a complaint in assumpsit against Orville C. Morrison, the appellant, to recover $1695 alleged to be due them because of the delivery of a diamond ring to Alvin C. Burton, his agent. After trial, the jury returned a verdict for the defendant. The court below granted plaintiffs' motion for a new trial.

The opinion of President Judge BONNELLY of the court below reviews the testimony as follows:

"Milton Neff testified that the defendant had called him on the telephone and asked him to submit some jewelry on approval as the defendant wished to give his wife an anniversary present. He told the defendant that he had a ring and a bracelet and the defendant told him that he would send a man down to receive them. The plaintiff, Milton Neff, was in the jewelry business on his own account for 35 years and did business at his present location for 30 years. He had done business with the defendant for about ten years and there were some twenty or thirty transactions, wherein the defendant received merchandise on

memorandum and would either accept the goods or return them. Burton had received goods from the plaintiffs for the defendant some eight or ten times.

"Milton Neff placed the bracelet and the ring on the counter and put them in separate boxes. Burton signed the memorandum in duplicate and retained one copy. Several days later Neff called the defendant and asked him how he liked the ring. The defendant said 'what ring.' He told Neff that he had insurance and would look around for the ring. Later he told Neff that he could not find the ring and did not have insurance. However, prior to the notification that there was no insurance, the defendant sent Neff a letter which reads as follows: 'Dear Milton: Inasmuch as the matter of the missing piece of jewelry is being handled by our attorneys and our insurance company, we think it would be wise if you in turn addressed all your inquiries to me through them.'

"Marvin Gities testified for plaintiffs. He said that he worked for Milton Neff for over eleven years; that he was in the store when Burton came in for the merchandise and he saw Neff lay the ring and bracelet on the counter and put them into boxes; that he saw Burton sign the memorandum which Neff put around the boxes and into a package which was wrapped and sealed with scotch tape.

"The defendant called Louis Neff, Milton Neff's son, as of cross-examination. He testified that the plaintiffs bought the ring on consignment and that he remounted the ring.

"The defendant testified that he asked Milton Neff to send up the bracelet but that when Neff asked him if he would like to look at a ring, he said no, because he had no use for a ring. On November 6, 1956, the day that Burton received the package from Neff, he saw his wife wearing the bracelet. The package had

been brought by Burton to Mrs. Morrison, the defendant's wife. When he learned that Neff claimed to have sent along a ring, he questioned Burton and for the first time learned of the duplicate memorandum which had been placed in the glove compartment of his car by Burton. He admitted writing the letter to Neff asking him to take up the matter with his attorneys and his insurance company. He also admitted making a thorough search for the missing ring.

"Alvin C. Burton testified that he was only in Neff's store for about a minute or a minute and a half and that he signed the duplicate copies of the memorandum without reading them; that the package was already wrapped when he received it; that he put the package and the memorandum in the glove compartment and delivered the package but not the memorandum to Mrs. Morrison.

"Mrs. Morrison testified that she received the box from Burton and that it contained only the bracelet; that although she was standing next to the kitchen sink, the ring could not possibly have gone through the hole in the sink; that the following Saturday Milton Neff called and asked how she liked the ring. She was 'stunned' and thought back that the trash man had collected trash twice since Tuesday, November 6th, if she had accidentally thrown the ring away."

The memorandum reads as follows:

"From                                    Date 11-6-1956
    MILTON NEFF
    Diamonds
    Watches & Jewelry              To Orville Morrison

72 Sansom Street
Philadelphia 6, Pa.

"The articles listed below are delivered to the undersigned by Milton Neff for the purpose of inspection only, and title to each and all of them is and shall re-

main in Milton Neff until he shall have given the undersigned a written Bill of Sale. The said merchandise shall be turned to Milton Neff upon demand. A request for the return of any or all of the said articles, made either upon the undersigned in person, or the address of the undersigned by sending of a registered letter to such address, shall be deemed a sufficient demand.

"The undersigned further agrees to return the said merchandise in good condition, and is liable to the said Milton Neff his heirs, administrators or assigns for any or all loss or damage resulting to the said goods from fire, theft or any other cause whatsoever.

"It is explicitly agreed that this transaction shall be unaffected by any prior dealings between the parties hereto, any custom of the trade to the contrary notwithstanding. I Dia Ring 325/100—1695.00 1 Brac—225.00. I have read the above agreement, received the goods therein, and agree to the terms thereof. Signature A. C. Burton."

The appellant recognizes the heavy burden assumed in seeking from this Court a reversal of this order awarding a new trial. It has been repeatedly held that the trial court necessarily has a wide discretion in granting a new trial. "Where a trial Judge or Court sees and hears the witnesses, it has not only an inherent fundamental and salutary power, but it is its duty, to grant a new trial when it believes the verdict was capricious or was against the weight of the evidence and resulted in a miscarriage of justice: . . . In such a case we will not reverse, unless there is a clear abuse of discretion or an error of law which necessarily controlled the grant of the new trial. . . ." *Clewell v. Pummer,* 388 Pa. 592, 598, 131 A. 2d 575 (1957).

The appellant points out that this case was first tried by a panel of arbitrators who found for the de-

fendant and on appeal the jury found for the defendant, so that in effect, the award of a new trial amounts to the requirement of a third trial and that this in itself is an abuse of discretion. However, the law is clear that where the verdict is capricious or against the weight of the evidence or results in a miscarriage of justice, it should not be allowed to stand, no matter how many new trials must be granted in the interest of justice. ". . . while the ascertainment of the underlying facts, and the drawing of the inferences and final conclusions therefrom, are for the jury, even where strong conflicting oral evidence is produced by a defendant, yet, in every such instance, a grave responsibility rests upon the trial judge to see to it that no verdict contrary to the weight of the evidence or shocking to judicial conscience is allowed to stand, no matter how many new trials must be granted in order to effect the ends of justice." *Maloy v. Rosenbaum Co.,* 260 Pa. 466, 472, 103 A. 882 (1918); *Elia v. Olszewski,* 368 Pa. 578, 84 A. 2d 188 (1951); *Hartigan v. Clark,* 389 Pa. 283, 288, 133 A. 2d 181 (1957).

After the verdict was entered in this case the trial judge asked each member of the jury whether he or she found as a fact that the diamond ring had not been delivered to Burton. Each juror answered in the affirmative. As the trial Judge says, "He did business with Morrison for ten years. During this time he always gave jewelry to Morrison on approval and always on the basis of a signed memorandum. The memorandum was not merely a receipt, it was a contract, and in a normal business like way. Neff retained one copy and gave a copy to Morrison or his representative.

"To reach the conclusion that the jury did, it must be based on a finding that Milton Neff, Louis Neff and their employe, Marvin Gities, entered into a conspiracy to defraud the defendant. Such a conspiracy could be successful only if Burton failed to turn over

the memorandum when he delivered the jewelry. As we have stated, we firmly believe that the conclusion of the jury is against all probability and amounts to a miscarriage of justice."

A review of the testimony disclosing that this finding of fact, disclosed by the trial judge's question to the jury, would force the assumption that the Neffs and Gities, in order to perpetrate the fraud, must anticipate that Burton would not examine the package; that he would not read the receipt upon signing it; that he would not deliver the package and the receipt to Morrison but would deliver it to his wife; and that he would leave the receipt in the car instead of delivering it to Morrison, so that it would not be seen by Morrison until some days after the package was opened. Under ordinary circumstances a package containing an anniversary gift would be delivered to the donor for presentation to his wife and certainly under reasonably forseeable circumstances, the package and the memorandum would have been delivered by Burton to Morrison or his wife, regardless of whether the receipt was in the package or separate from the package, and then Morrison would most certainly have discovered that a ring for which his agent had acknowledged delivery in writing, was not contained in the package and prompt notice of the missing article would have been given to the Neffs.

We conclude, therefore, that the award of a new trial was not an abuse of discretion under the circumstances in this case.

Order affirmed.

Gunther, J., dissents.